IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PARAGON METALS, INC., | ) | CV. NO. 08-00292 DAE-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SCHNITZER STEEL HAWAII | ) | |
| CORP., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S RULE 11
MOTION FOR SANCTIONS

On August 20, 2009, the Court heard Defendant's Motion for

Summary Judgment and Rule 11 Motion for Sanctions.  Ted Pettit, Esq., and Malia

Lee, Esq., appeared at the hearing on behalf of Plaintiff; Gary Grimmer, Esq., and

Arsima Muller, Esq., appeared at the hearing on behalf of Defendant.  After

reviewing the motion and the supporting and opposing memoranda, the Court

**GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Defendant's

Motion for Sanctions.

BACKGROUND

The City and County of Honolulu offers a special disposal discount to businesses that dispose of "residue" from recycling operations in the Waimanalo Landfill ("the Discount Ordinance").  Honolulu, Haw., Rev. Ordinances ch. 9, art. 4, § 9-4.2(c).  "Residue" is generally the non-metal materials, such as plastic, rubber, and fabric, that is separated from the metal during a shredding process. (Doc. # 52 at 2.)

Under this program, the fee charged to businesses to deposit their residue in the landfill will be discounted by 80% so long as the residue meets certain criteria, the most important of which to the instant motion is the requirement that the residue "not contain any recyclable material."  Honolulu, Haw., Rev. Ordinances ch. 9, art. 4, § 9-4.2(c)(6).

Plaintiff Paragon Metals, Inc. and Defendant Schnitzer Steel Hawaii Corp. are competing scrap metal dealers engaging in the buying and selling of scrap metal in the State of Hawaii for interstate and international resale.

Defendant deposits residue in the landfill.  Defendant is required to submit monthly reports to the City and County of Honolulu Department of Environmental Services ("the Department") and note whether the residue from its recycling operations contains any recyclable material, pursuant to the Discount

2

Ordinance.  Id. § 9-4.2(c).  The director of the Department determines whether the residue is eligible for the disposal discount.  Id.

On October 7, 2008, Plaintiff filed its First Amended Complaint asserting two claims for relief regarding Defendant's discount:  1) Defendant engages in unfair competition, in violation of Hawaii Revised Statutes ch. 480-2; and 2) Defendant engages in deceptive trade practices, in violation of Hawaii Revised States ch. 481A-3.  (Doc. # 5 at 12-13, 17.)  On December 19, 2008, this Court denied Defendant's motion for judgment on the pleadings, finding that the fact that the Discount Ordinance does not have a private right of action does not bar Plaintiff's action pursuant to section 480-2 or 481A-3.  (Doc. # 20.)

On May 11, 2009, Defendant filed the instant Motion for Summary Judgment.  (Doc. # 37.)  On July 30, 2009, Plaintiff filed its Opposition.  (Doc. # 52.)  On August 6, 2009, Defendant filed its Reply Memorandum in Support of Motion for Summary Judgment.  (Doc. # 54.)  Attached as Exhibit A to Defendant's Reply is Defendant's Rule 11 Motion for Sanctions.  (Doc. # 54 Ex. A.)

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't

of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d

1130, 1134 (9th Cir. 2000).  "A material fact is one which may affect the outcome

of the litigation."  Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270,

282 (9th Cir. 1979).  A main purpose of summary judgment is to dispose of

factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317,

323-24 (1986).

       Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  See id. at

323.  In other words, the moving party satisfies its burden under Rule 56 by

demonstrating "that there is an absence of evidence to support the non-moving

party's case."  Id. at 325.  A moving party without the ultimate burden of

persuasion at trial -- usually, but not always, the defendant -- has both the initial

burden of production and the ultimate burden of persuasion on a motion for

summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099,

1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify

for the court those "portions of the materials on file that it believes demonstrate the

absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec.

4

Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "'must set forth specific facts showing that there is a genuine issue for trial'" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003).  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.  The issue of material fact need not be "'resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing version of the truth at trial.'"  T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank, 391 U.S. at 288-89).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

Two statutes are the subject of Plaintiff's claims, and the underlying issue for each is whether Defendant complied with the requirement in the Discount Ordinance to dispose of residue free of recyclable material and properly reported such residue.  See Honolulu, Haw., Rev. Ordinances ch. 9, art. 4, § 9-4.2(c)(6). First, Hawaii Revised Statutes ("HRS") § 480-2(a) renders unlawful any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Plaintiff asserts that Defendant violates this statute by misrepresenting its residue on the monthly report to receive a disposal subsidy it

6

does not deserve, thereby receiving an unfair competitive advantage.  (Opp'n at 1,

3.)  Second, HRS § 481A-3(a)(5) states that a person engages in a deceptive trade

practice when the person "[r]epresents that goods or services have . . .

characteristics . . . that they do not have."  According to Plaintiff, Defendant

violates this statute by misrepresenting that the residue either does not have any

metal or that it is not a marketable recyclable material.  (Am. Compl. at 17; Opp'n

at 1.)

   As a preliminary matter, this Court must address Plaintiff's

characterization of its own complaint, first in its Amended Complaint and then in

its Opposition.  In the Amended Complaint, Plaintiff asserts that Defendant

violates the Discount Ordinance and the statutes by depositing residue that contains

"any metal."  (Am. Compl. at 13-14, 16-17.)  It is true that the Discount Ordinance

requires that residue not contain any recyclable material, which by definition

includes metal scrap.  Honolulu, Haw., Rev. Ordinances ch. 9, art. 4,

§§ 9-4.2(c)(6), 9-1.2.  Plaintiff, however, focused on only one portion of the

definition of recyclable materials (metal scrap), and ignored the additional

requirement that there be an <u>existing market</u> for the metal scrap.  <u>Id.</u> § 9-1.2.  The

issue is not whether there is any metal deposited by Defendant in the landfill, but

rather whether there is an existing market for that metal.  Defendant properly

asserts this argument in its Motion.  (Mot. at 2, 4.)

Plaintiff then responds in its Opposition that Defendant does in fact

dump recyclable materials in the landfill because there is an existing market for the

metal scrap.  (Opp'n at 1, 9.)  Defendant points to the Seventh Circuit's holding in

Griffin v. Potter, 356 F.3d 824 (7th Cir. 2004), to argue that this Court should

dismiss based on Plaintiff's improper amendment to complaint.  Id. at 830 (stating

that plaintiff "could not amend her complaint through allegations made in response

to a motion for summary judgment").  In Griffin, the plaintiff alleged a new harm

in her response to summary judgment.  Id.

Plaintiff's lapse does not go so far as to warrant dismissal on these

grounds.  Plaintiff's focus on the amount of metal and description of the standard,

although inartful, does form a part of the proper analysis.  Plaintiff does not now

assert a new harm or a new violation of a different law.  This Court will hold

Plaintiff to its allegation that the materials deposited in the landfill by Defendant

are in fact recyclable materials with an existing market.

A.    Dumping of Recyclable Materials

Whether Defendant deposits recyclable material into the landfill is a

question of fact.  Defendant argues that Plaintiff fails to establish sufficient facts

8

that show Defendant dumps recyclable material into the landfill for which there is an existing market.

Plaintiff contends that the reports of its experts Dr. Carpenter[1] and Professor Dalmijn[2] establish that there is a market for the material. Plaintiff's arguments are circular, however, and Plaintiff seems to be saying that because there is some metal in the residue, there is a recyclable market for that metal.

Plaintiff first presents Dr. Carpenter's analysis of four samplings of Defendant's residue deposited in the landfill.[3] The residue was provided to Dr. Carpenter by Plaintiff and by Waste Management of Hawaii.[4] According to Dr. Carpenter, the residue is made up of between 5.76% and 11.38% metal compounds. (Carpenter Opp'n Decl. ¶ 8 & Ex. B-C.)

---

[1] James Carpenter, Ph.D., Professor and Department Chair of Human Nutrition, Food and Animal Sciences in the College of Agriculture and Human Resources at the University of Hawaii. (Carpenter Opp'n Decl. ¶ 2.)

[2] Wijnand Dalmijn, Professor of Delft University of Technology in the Netherlands. (Dalmijn Opp'n Decl. ¶ 3.)

[3] In its Opposition, Plaintiff does not explain to this Court how Plaintiff obtained this sampling. Plaintiff asserts that the materials must be from Defendant, because the materials were from Automobile Shredder Residue ("ASR"), and Defendant is the only known company processing metal scrap and creating ASR for dumping at the landfill. (Carpenter Opp'n Decl. ¶ 8a.)

[4] Waste Management manages and operates the landfill. (Carpenter Opp'n Decl. ¶ 8a.)

Plaintiff then presents Professor Dalmijn's testimony that, based on Dr. Carpenter's analysis of metal content and the total tonnage of residue dumped by Defendant,[5] there is a market for the metal.  (Opp'n at 9; Dalmijn Opp'n Decl. ¶¶ 6-7.)  According to Plaintiff's reasoning, there is an existing market for the metal dumped because Defendant "has the ability to recover the metallic content of the residue before it is dumped in the landfill."  (Opp'n at 9.)  As the theory goes, if Defendant re-processed its residue or made modifications to its processing equipment, Defendant would recover some of the metal content it currently dumps in the landfill.  (Dalmijn Opp'n Decl. ¶ 6.)  Plaintiff offers a conclusory analysis: "Therefore, based on evidence obtained by Paragon, and as analyzed by Paragon's experts . . . the shredder residue dumped by Schnitzer contains significant metal content and recyclable materials."  (Opp'n at 12-13.)  The fact that Defendant might theoretically be able to recover some of the metal is not the extent of the analysis; Plaintiff's experts have not provided sufficient evidence that there is an existing market for the metal.

Plaintiff relies specifically on the events of November 2008 to January 2009, when Defendant reprocessed approximately 2000 to 2500 tons of residue to

---

[5] According to James Banigan, General Manager of Schnitzer Steel Hawaii Corp., Defendant dumps approximately 25,000 tons of residue into the landfill each year.  (Banigan Opp'n Dep. Ex. G at 102.)

recover metals, to demonstrate that there is a market for the metals in the residue. (Opp'n at 10; Opp'n Ex. G at 74.)  In his deposition, James Banigan, General Manager of Defendant Schnitzer Steel Hawaii, admits that during those months, Defendant had to reprocess its residue because there was an "inordinate amount of metallics" in the waste stream.  (Opp'n Ex. G. at 65, 74-76.)

According to Mr. Banigan, the cause for this reprocessing was low voltage from the Hawaiian Electric Company that caused the processing machines to operate at lower efficiency.  (Id. at 65-66, 74-76.)  In other words, because of low power, Defendant released more metal than usual, and then reprocessed the residue to recapture that metal.[6]  This Court does not see how this qualifies as evidence that there is an existing market for Defendant's residue.  The very reason Defendant reprocessed the metal was to recapture metal that in fact should not have been in the residue.

---

[6] At the hearing on this matter, counsel for Plaintiff said they believed that Defendant is still experiencing low voltage and is still operating inefficiently but that Defendant is no longer reprocessing the extra residue as it had in November 2008 through January 2009.  A review of Mr. Banigan's deposition, however, indicates only that Defendant ceased keeping records of how much residue it had reprocessed, not that Defendant has stopped reprocessing.  (Opp'n Ex. G. at 74-76.)  Therefore, there is no evidence in the record before the Court that Defendant has stopped reprocessing.

Even if Defendant could recoup some of the metal, records of the intent behind the Discount Ordinance indicate that, in order to be considered "recyclable materials," the residue would have to have some economic benefit.[7] (Opp'n Ex. K.)  Nowhere do Plaintiff's experts identify any economic benefit to the remaining metal in the residue.  Plaintiff fails to sufficiently establish a market or buyer for the "extra" metal.  The evidence proffered only relates to the existence of metal in the residue, which is undisputed by Defendants.  (Mot. at 2.)  The Report of the Committee on Public Works and Safety stated that the purpose of this subsidy is "to promote recycling by certain businesses by reducing the refuse disposal charge assessed when those businesses dispose of residue material generated from recycling operations."[8]  (Mot. Ex. 6.)  It would be counterproductive if the business had to operate at a financial loss to fulfill its duty under the ordinance.  It must be economically advantageous to remove the metal in the residue, which does not appear to be the case here.  Frank Doyle, Chief of the Refuse Division of the Department, testified in his deposition that "I don't think

---

[7] Report of the Committee on Public Works & Safety, Comm. Rep. No. 311 (1991).

[8] Report of the Committee on Public Works & Safety, Comm. Rep. No. 416 (1991).

12

there are any big pieces in there that are worth going in and trying to take out."

(Opp'n Ex. H at 51-52.)

Furthermore, both parties agree that there is no machinery that is capable of removing all metals from the residue and that no scrap metal business in the world produces residue that is completely free of metal scrap.  (Banigan Mot. Decl. ¶ 6; Mot. Ex. 1 at 130-32.)

Defendant presents the declaration of Chief Doyle as evidence that there is no market for the material dumped in the landfill.  The Department, which is charged with administering the Discount Ordinance, is of the opinion that Defendant has not violated the ordinance.  "The Division is aware that Schnitzer Hawaii's recyclable material residue contains some metal, but to [Chief Doyle's] knowledge there is no market for either the residue or the small amount of residual metal it contains."  (Doyle Mot. Decl. ¶ 4.)  Further, the "Division believes that Schnitzer Hawaii is a qualifying recycler . . . [and] the Division has no evidence that Schnitzer Hawaii is 'dumping recyclable materials' in the Waimanalo Gulch Sanitary Landfill."  (Id. ¶ 3.)

Plaintiff presents no evidence to contradict the declaration of Chief Doyle.  Instead, Plaintiff asks this Court to give no weight to the Department's position.  (Opp'n at 18-19.)  The Department administers the Discount Ordinance,

13

is expressly given the duty to determine whether the residue from the recycling operation is eligible for the discount, and is empowered to revoke the discount should the business violate any of the conditions.    Honolulu, Haw., Rev. Ordinances ch. 9, art. 4, § 9-4.2(c)(6).  The Department may also levy fines.  <u>Id.</u> § 9-5.1.  Plaintiff must present more than broad allegations of the Department's purported lack of knowledge if this Court is to decline to grant the Department its due deference.  Furthermore, Plaintiff's broad request that this Court not defer to the Department's determination misses the point.  Even if this Court were to give no weight to Chief Doyle's testimony, which the Court does not claim to do, the fact remains that Plaintiff has not satisfied its burden to give some evidence to the existence of recyclable materials in the residue.

Plaintiff complains that Defendant and the County fail to conduct sample testing of Defendant's residue and thereby fail to uphold the purpose of the Discount Ordinance.  (Opp'n at 7-8, 13.)  Even if true, this has little bearing on the claims Plaintiff asserts in its Amended Complaint, namely, unfair competition and deceptive practices.  The ordinance does not provide for a private right of action, and Plaintiff has not presented this Court with a cause of action for requiring Defendant or the County to test and report on the metal content of the residue.

Once again, Plaintiff cannot evidence the presence of a market by demonstrating that metal exists.

### B.   Release of Toxic Chemicals

This Court acknowledges the health hazards associated with mercury and toxic metals, about which Plaintiff takes great pains to inform the Court.  (Am. Compl. at 5-10.)  Plaintiff does not, however, provide any factual evidence that Defendant has released any substance in violation of any state or federal law.  To the contrary, Defendant has passed the leachate and residue tests that are required of it by Waste Management.  "There have been no test results that exceed EPA and DOH permissible levels."  (Doyle Mot. Decl. ¶ 7.)

### C.   Unfair Competition and Deceptive Trade Practices

The sole basis for Plaintiff's claims of unfair competition and deceptive trade practices under HRS §§ 481A-3 and 480-2 is Defendant's alleged violations of the Discount Ordinance.

To establish a violation of HRS § 481A-3, deceptive trade practices, Plaintiff claims Defendant represents that its residue has characteristics it does not have – namely, that it is free of recyclable materials with an existing market.  It is true that Defendant represents that its residue does not contain any metal scrap with an existing market, but Plaintiff has not offered sufficient evidence to the

15

contrary.  Plaintiff has not offered sufficient evidence to establish a violation of the

Discount Ordinance, offers insufficient evidence that Defendant has

mischaracterized the residue as being without recyclable materials, and therefore

cannot offer evidence of a violation of the statute.[9]

The statute prohibiting unfair methods of competition, HRS § 480-2,[10]

does not specify conduct that would violates the provision.  See Haw. Cmty. Fed.

Credit Union v. Keka, 11 P.3d 1, 15 (Haw. 2000).  A court may determine on a

case-by-case basis whether certain conduct meets the statutory term.  In re

Kekauoha-Alisa, 407 B.R. 442 (B.A.P. 9th Cir. 2009).  Whether an act is "unfair"

often comes down to a subjective analysis of whether the act offends public policy,

is immoral, or causes substantial injury to consumers.  Keka, 11 P.3d at 16.

---

[9] The Court further notes that HRS § 481A-5(a)(1) states that the chapter does not apply to "conduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency."  The record before this Court indicates that Defendant is engaging in conduct in compliance with the rules of the Department.

[10] Until 2002, standing to sue under HRS chapter 480 was generally limited to a "consumer" but was silent as to action based on unfair methods of competition.  See Dash v. Wayne, 700 F. Supp. 1056 (D. Haw. 1988).  In 2002, however, the statute was amended and the statute now treats a suit based on "unfair methods of competition" separately from an action based on "unfair or deceptive acts or practices."  See Haw. Rev. Stat. § 480-2(d)-(e).  Because Plaintiff is claiming unfair methods of competition, Plaintiff is not subject to the "consumer" limitation.   "Any person may bring an action based on unfair methods of competition declared unlawful by this section."  Id. § 480-2(e).

16

Plaintiff has not provided sufficient evidence to support its claim that Defendant's business operations are unfair.  First, Plaintiff has failed to demonstrate that Defendant is not in compliance with County laws, which was Plaintiff's primary public policy argument.  Second, Plaintiff's attempts to characterize Defendant's acts as somehow immoral or in violation of a duty to conduct extra testing are dubious and not supported with evidence.  Third, Plaintiff's allegation that Defendant causes injuries to consumers or the public via release of toxic chemicals is undone by evidence that Defendant complies with state and federal hazardous waste laws.

In sum, Plaintiff has failed to provide sufficient evidence to support either claim.  Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment.

D.    Motion for Rule 11 Sanctions

As an exhibit to Defendant's Reply, Defendant requests that this Court impose sanctions on Plaintiff pursuant to Rule 11 of the Federal Rules of Civil Procedure on the basis that:  1) Plaintiff's claims in the Amended Complaint are not warranted by existing law; and 2) Plaintiff's factual contentions have no evidentiary support.  (Reply Ex. A.)  It is within the Court's discretion to impose sanctions pursuant to Federal Rule of Civil Procedure 11.  See Christian v. Mattel,

17

Inc., 286 F.3d 1118, 1126 (9th Cir. 2002).  This Court does not believe that

Plaintiff's failed attempts to establish evidence that the metal is recyclable warrant

sanctions.  Accordingly, this Court DENIES Defendant's motion for sanctions.

<u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS** Defendant's

Motion for Summary Judgment and **DENIES** Defendant's Rule 11 Motion for

Sanctions.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 24, 2009.



_____
David Alan Ezra
United States District Judge

Paragon Metals, Inc. vs. Schnitzer Steel Hawaii Corp., CV No. 08-00292 DAE-
LEK; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANT'S RULE 11 MOTION FOR
SANCTIONS